## HARTFORD S. B. I. & INS. CO.

### v.

## LASHER STOCKING COMPANY.

MAY TERM, 1894.

*Contract by letter. When it is completed. Absolute acceptance. What is the place of such contract. Insurance. Estoppel. Premium. Mortgage.*

1. Where a contract is made and accepted by letter sent through the post, it is completed and takes effect the moment the letter accepting the proposition is deposited in the post office.

2. The letter of acceptance must be an absolute and not a conditional acceptance.

3. The defendant, a Vermont corporation, made an application for insurance and delivered it at Bennington, Vt., to the special agent of the plaintiff, a Connecticut corporation, who transmitted it to the New York office of the plaintiff.

The plaintiff, through its New York office, issued a policy of insurance, and mailed it in the city of New York to the defendant at Bennington. *Held*, that the contract took effect at the time of mailing the policy ; that it was a New York contract, and that therefore whether the plaintiff or its agent had a license to transact business in this state was immaterial.

4. The insurance was against damage from the explosion of defendant's boiler. Accompanying the policy was a report from the plaintiff's inspector in reference to certain changes in the setting of the boiler, which the defendant claimed made such changes a condition precedent to the taking effect of the policy. *Held*, that the report did not make such changes a condition precedent, but was simply intended as a suggestion to the defendant that they ought to be effected.

5. If the plaintiff issued its policy knowing this defect in the setting, it would be estopped from urging it as a defence to a suit upon the policy.

6. After the delivery of the policy, the defendant executed a mortgage upon the property and the defendant claimed that this rendered the policy void, and was a defence to this action for the premium. *Held*, that it did not appear that the policy was thus rendered void, for a mortgage was not a change in the title ; but that however this might be, the defendant could not by its act after the completion of the contract escape liability for the payment of the premium.

Book account. Heard upon the report of an auditor and exceptions thereto at the December term, 1893, Bennington county, Ross, C. J., presiding. Judgment overruling the exceptions to the report and for the defendant to recover its costs. Exceptions by both parties.

The plaintiff was an insurance company duly incorporated under the laws of Connecticut, having its home office at Hartford, in the state of Connecticut, and a branch office in the city of New York, through which its Vermont business was transacted. The defendant was a Vermont corporation, having its principal place of business at Bennington, in the state of Vermont. The plaintiff seeks to recover one hundred dollars due it as a premium upon a policy of insurance issued by it in favor of the defendant.

May 7, 1892, the defendant signed a written application to the plaintiff for insurance against damage arising from the explosion of its boiler. This application was made by the defendant at the solicitation of one Bernard McChan, a special agent of the plaintiff, and was delivered to him at Bennington, Vermont, and by him transmitted to the branch office of the plaintiff in New York City.

May 13, 1892, one Babcock, the manager of the New York branch office, deposited in the mail at New York City an envelope containing the policy of insurance in accordance with the terms of the application and another paper marked " Exhibit C.," and which was a report from an inspector of the plaintiff who had examined the defendant's boiler and who suggested certain changes in the setting of the boiler in this report. The policy and exhibit C. were duly received by the defendant on May 15.

On June 1 the defendant returned the policy, declining to receive it for the reason that the report of the inspector required these changes in the setting of the boiler which the defendant was unwilling to make. On June 5 the plaintiff returned the policy to the defendant and notified it that the payment of the premium would be insisted upon.

The defendant alleged upon the trial before the auditor that its refusal to accept the policy and pay the premium was due to the fact that it understood that exhibit C., taken in connection with certain parts of the policy, required as a condition precedent to the taking effect of the policy that the changes specified in it should be made in the setting of the boiler, and the master found, from evidence received under the objection and exception of the plaintiff, that the defendant did in good faith so understand and believe. He further found, upon evidence received under the objection and exception of the defendant, that the plaintiff did not so intend. By enclosing exhibit C. it simply intended to point out the fact that these changes ought to be made.

Exhibit **C**. was as follows :

"NEW YORK, May 13, 1892.
*"To the Lasher Stocking Co., Bennington, Vt.:*
" The Hartford Steam Boiler Inspection and Insurance Co. makes the following report of an external examination of your steam boiler, made May 12, 1892 :

"One boiler, externally in good condition as far as can be told by external examination. Safety valve and connections in good working order.

" The flues over boiler should be so arranged as to prevent heat from furnace flues coming in contact with top of shell of boiler above water level.

"R. K. McMURRAY,
" Chief Inspector."

The parts of the policy bearing upon this question and the further question as to whether the policy would be avoided by the execution of a mortgage were as follows :

"Against all such immediate loss or damage as shall be caused to the property or persons specified, by the explosion or rupture caused by the action of steam, of the boiler described in the application of the assured—except as hereinafter provided, and not exceeding in amount the sum insured—from the 13th day of May, eighteen hundred and ninety-two, at 12 o'clock, noon, until the 13th day of May, eighteen hundred and ninety-five, at 12 o'clock, noon ; to be paid at said Hartford within sixty days after notice and proof of loss made by the assured, according to the requirements and in conformity to the provisions of this policy, it being expressly covenanted and agreed, as conditions of this contract, that this company is not to be liable for any loss or damage resulting from neglect to use all reasonable efforts to save and preserve the property at the time of and after any explosion ; nor for any loss where the boiler or boilers are placed in charge of a person known to be incompetent or negligent; nor for any explosion caused by the burning of the building or steamer containing the boiler or boilers ; nor for any loss or damages in case the load on the safety valve approved by the company's inspector, viz. : one hundred (100) pounds per square inch, shall be exceeded ; and if the title or possession of said property is transferred or changed, or if this policy is assigned without the written

consent of this company endorsed hereon, this policy shall be void; and any change in the boilers, within the control of the assured, material to the risk, without the consent of this company, shall make void this policy.

"Prevention of steam boiler explosions being one of the objects of this company, it is hereby agreed that the inspectors of this company shall at all reasonable times have access to said boiler or boilers, and the machinery connected therewith, on which safety depends; and ample facilities shall be afforded to such inspectors, whenever this company shall desire it, for a thorough examination of said boiler or boilers; and should any inspector at any time discover any defect affecting the safety of said boiler or boilers, or the apparatus connected therewith, he shall notify the assured, or should the assured discover any defect, or be notified of any defect or source of danger by the engineer, or by any person using said boiler or boilers, in either case the policy shall become void, unless the boiler or boilers so affected cease to be worked until such defect shall be thoroughly repaired by the assured to the satisfaction and approval of the inspector of this company; and this company reserves the right at any time to cancel this policy, in which case, after deducting the charges for inspection, the company will return to the assured a ratable proportion of the remaining premium for the unexpired term of this policy. This policy may also be cancelled at the request of the assured in case of the sale, lease, transfer or destruction of the boiler or boilers insured, or the buildings containing same, or if the boiler or boilers shall cease to be used for a period of more than three months, provided the premium has been paid; in which case the company, after deducting the charges for inspection and the customary short rates for the time the policy has been in force, will return to the assured the remaining portion of the premium. But if this policy is delivered to, or presented for cancellation through, by, or in the interest of any other boiler insurance company, no return premium will be paid."

The auditor found from evidence introduced subject to the objection and exception of the plaintiff, that subsequent to the issuing of the policy and before the beginning of the suit the defendant had executed two mortgages upon its

property covering the boiler in question, but that these mortgages had never been recorded.

The auditor also found from evidence received against the objection and exception of the defendant that the plaintiff was licensed to transact an insurance business in the state of Vermont, and that a similar license had been issued to the said Bernard McChan. He further found that the said McChan was not at the time the license was issued to him in fact a resident of the state of Vermont, although he so represented to the insurance commissioner at the time his license was issued.

*C. H. Darling* for the plaintiff.

Since McChan had obtained his license in due form it could not be collaterally attacked in this proceeding. *George v. School Dist.*, 20 Vt. 495; *Blanchard v. School Dist.*, 29 Vt. 433.

Inasmuch as the auditor does not find any bad faith in reference to the issuing of said license it cannot be inferred. *Greensboro v. Underhill*, 12 Vt. 604; *Stevens v. Gunning's Est.*, 64 Vt. 661; *Walcott v. Hamilton*, 61 Vt. 79; *Aiken v. Blaisdell*, 41 Vt. 655.

The contract was a New York contract and the law of Vermont does not prohibit a party in Vermont from obtaining insurance on property in this state by contract made in New York. *Taylor v. Merchants' F. I. Co.*, 9 How. 390; *Weston v. Genessee I. Co.*, 12 N. Y. 258; *Fore v. Buckeye State I. Co.*, 16 Bush. (Ky.) 133; 99 Am. Dec. 663.

The plaintiff having issued the policy of insurance with full knowledge of the condition of the setting of the boiler could not afterwards have objected that the changes had not been made. *Bevin v. Connecticut F. I. Co.*, 23 Conn. 244; *Viele v. Germania I. Co.*, 26 Iowa 9; 96 Am. Dec. 100; *Smith v. Niagara F. I. Co.*, 60 Vt. 682; *Walsh v. Vt.*

*Mut. Ins. Co.*, 54 Vt. 351; *Carrigan* v. *Lycoming Ins. Co.*, 53 Vt. 418.

*W. B. Sheldon* for the defendant.

The plaintiff must prove a compliance with the law in respect to the license to itself and its agent. *Lycoming F. I. Co.* v. *Wright & Son*, 55 Vt. 532; *Ins. Co.* v. *Hastings*, 84 Mass. 398; *Ins. Co.* v. *Chamberlain*, 82 Mass. 165; *Ins. Co.* v. *Phillips*, 79 Mass. 90; *Ins. Co.* v. *Dawes*, 72 Mass. 379; *Jones* v. *Smith*, 69 Mass. 500.

The sending of exhibit C. with the policy did not amount to an absolute acceptance of the application for insurance, but was conditional; hence the contract was not complete. *Cadwell et al.* v. *Blake et al.*, 72 Mass. 407; *Durfey* v. *Worcester*, 63 Vt. 621.

The subsequent mortgage avoided the policy. *McGowan* v. *Ins. Co.*, 54 Vt. 214; *Tarbell* v. *Ins. Co.*, 63 Vt. 58; *Swift* v. *Ins. Co.*, 18 Vt. 313.

TAFT, J.   From the auditor's report it appears that the plaintiff accepted the defendant's application for insurance, executed a policy and enclosed it to the defendant May 13, 1892, depositing it in the post office in New York City. The law is now well settled that if an offer of a contract is made and accepted by letters sent through the post, the contract is complete the moment the letter accepting the offer is posted, and this upon the ground that the post office is regarded as the agent of the one making the proposition. The acceptance must be identical with the terms proposed. That it cannot be conditional and take effect at that time see *Fenno* v. *Weston*, 31 Vt. 345. We do not regard the letter of the plaintiff's inspector, sent the defendant, as a part of the contract, nor as a condition precedent upon the fulfilment of which the contract was to take effect, but as a suggestion to the defendant in regard to the future state and condition of

the boiler.    The plaintiff having delivered the policy, knowing the condition of the boiler in the respect named, would be estopped from insisting that the policy was void by reason of the non-compliance with the suggestion.    De-livering the policy, knowing the condition of the boiler, it cannot be heard to say that the contract was void for the reason named.    The contract taking effect when the policy was deposited in the New York post office, was a New York contract, and must be governed by the law of that state, and the presumption is it was a valid agreement.    As the con-tract was a New York one, the questions of the authority of the plaintiff to transact business in this state, the non-allega-tion of that fact in the declaration, and whether the plaint-iff's agent, through whom the application for the policy was transmitted, was duly licensed, are immaterial and need not be considered.

The defendant claims that the policy became void subse-quent to its delivery by reason of one or more mortgages given by it, as there is a condition in the policy that renders it void if the title of the property was transferred or changed without the consent of the plaintiff.    Giving a mortgage upon the property did not change or transfer the title ; it en-cumbered it, but it does not appear that there was any pro-viso against an incumbrance.    If the mortgage did render the policy void it did not affect the plaintiff's right to the premium which became due it at the time the policy took effect, May 13, 1892.

*Judgment reversed and judgment for the plaintiff.*

Start, J., being absent in county court, did not sit.